BROWN v. MONROE AUTOMOBILE &
SUPPLY CO., Inc.

No. 5573.

Court of Appeal of Louisiana. Second
Circuit.

March 8, 1938.

James D. Sparks, of Monroe, for appellant.

McHenry, Lamkin & Titche, of Monroe, for appellee.

TALIAFERRO, Judge.

Plaintiff purchased from defendant a Dodge sedan on April 23, 1934. Of the price, $500 was deferred. This amount, plus $76 to cover interest and premium for insurance against loss from theft and fire, denominated carrying charges, was payable in eighteen monthly installments. No insurance against loss or damage due to collision was effected, although plaintiff thought such had been done. The car was seriously damaged by upset on July 24, 1935. On learning thereafter that he was not protected by collision insurance, plaintiff instituted this suit against his vendor to hold it responsible for the damages to the car and for loss from deprivation of its use while undergoing repairs. His action is predicated upon the theory and contention that, as a concomitant of the sale and purchase of said car, defendant specifically agreed and obligated itself to effect collision insurance thereon, but failed to do so.

In amplification of his position, plaintiff alleges that, during the negotiations culminating in the sale of the car, defendant, through its agents, Ernest Breard, salesman, W. B. Jackson, sales manager, and W. L. Ethridge, president, promised and agreed that, if he would purchase the car for the price finally agreed upon, they would have it insured against loss from fire, theft, and collision, with the customary $50 deductible clause, for the term of the deferred payments. He further alleges that at the time of sale it was mutually understood that the deferred payments, represented by his one note, would be financed through the C. I. T. Corporation, of Chicago, Ill.; and that, as soon as the note was assigned to that corporation, defendant would have it effect all of said insurance at defendant's expense; that he did not become aware of the failure to fully comply with the agreement until after the car was damaged, because the

insurance policy which did issue was retained by the said C. I. T. Corporation until October 25, 1935, when the last installment on the price was paid by him.

Defendant denies that it, or any of its agents, agreed or obligated itself to take out for plaintiff's benefit collision insurance on the car sold him, and denies that it was obligated to bear the expense of that character of insurance protection. It avers on information and belief that the said C. I. T. Corporation delivered to plaintiff all contracts of insurance which were carried by it on the car, and that from these contracts plaintiff was made aware that no collision insurance was included therein, and he registered no complaint or protest on that account until after the car had been wrecked.

At the conclusion of the introduction of evidence, defendant filed a plea of estoppel in bar of plaintiff's right to recover, even should it be found and held that the obligation rested upon defendant to procure collision insurance on the car as contended for by him. The conclusion we have reached on the merits of the case obviates the necessity of stating the substance and basis of this plea or of passing on it.

Plaintiff's demand was rejected and his suit dismissed. He has appealed.

Plaintiff desired to purchase a Dodge automobile and entered into negotiations looking to this end with defendant's salesman, Breard. The matter was discussed between them possibly a dozen times and over a period of thirty days or more. Plaintiff owned an old car which he wished to trade in on the price of a new one. He valued the car at more than Breard was authorized to allow for it. They were unable to reach an agreement as to the amount of the monthly payments on the credit part of the price and carrying charges. During these negotiations Breard advised plaintiff that it would be prudent to carry collision insurance on the new car in addition to insurance against loss from theft and fire and informed him what such insurance would cost, and that the premium could be included in the note he would give to cover the deferred part of the price and other carrying charges. Plaintiff was sold on the idea. However, negotiations between them had reached an impasse.

On April 23d, Breard and plaintiff discussed the matter while in defendant's place of business in the city of Monroe.

Their inability to arrive at an agreement was brought to the attention of Mr. Ethridge, defendant's president, by Breard. Breard was dismissed from the negotiations and Ethridge personally undertook to close a trade with plaintiff, and succeeded. No other person participated in their final discussions. However, there is no disagreement between them as to what was then and there said and done. Each admits that the question of insurance of any character on the new car was not mentioned by either. It was mutually understood that the note plaintiff would give to close the trade would be secured by a mortgage on the car, and that it would thereafter be sold to a finance corporation, which was done. Ethridge knew that this corporation would only require fire and theft insurance on the car as a condition precedent to purchasing the note. He therefore included in the carrying charges an amount sufficient only to pay the premium for such insurance. He testified, which is obviously true, that he would have gladly made provision for collision insurance had plaintiff requested it, as his company received a substantial commission on such premiums. Plaintiff assumed from his conversations with Breard that collision insurance would be included in the trade, as a matter of course. These conversations are exclusively relied upon to fasten responsibility upon defendant. Contrary to his allegations, plaintiff admits that he discussed the matter of insurance on the car with no other representative of defendant.

Plaintiff is positive that Breard definitely agreed with him that, if a sale were closed with defendant, collision insurance would be taken out and that the premium therefor would be included in the installment note. Breard is as equally positive that he made no such commitment. He testified that he knew the finance company only required fire and theft insurance as a condition to the purchase of such a note, and that what he said to plaintiff about collision insurance was of an advisory character. It is shown that only a small per cent. of defendant's car purchasers request that collision insurance be effected for them. This is generally arranged through other companies or agencies, independent of transactions with defendant.

Breard, as salesman, was clothed with limited powers of agency. He had no authority to close a credit sale before sub-

mitting its terms to Mr. Ethridge or Mr. Jackson for approval. He certainly was not empowered to close a trade with plaintiff on the terms and conditions finally reached. Breard centered his efforts on selling plaintiff a six-wheel Dodge sedan. Plaintiff was willing to make the purchase, provided defendant would take his old car on the price at a value Breard was not authorized to allow, plus his eighteen notes for $30 each to cover the deferred part of the price and interest and carrying charges. Breard's proposition carried with it an allowance of $200 for the old car, and the acceptance of plaintiff's eighteen notes of $36 each, plus an amount in cash, to close a trade. He was being advised by Mr. Jackson in this regard during the negotiations. These monthly payments of $36 included $1 to pay for the premium for collision insurance. The total also included interest and other carrying charges, aggregating $109, exclusive of that for collision insurance premium. The trade actually consummated was for a five-wheel Dodge sedan. Plaintiff was allowed $227 for his used car. The carrying charges were reduced to $76, as a concession to procure plaintiff's consent to the sale, and the last installment was .fixed at $66. Therefore, it is obvious that the sale effected by Mr. Ethridge's efforts was different as to object and terms to any proposition submitted to plaintiff by Breard. Breard testified that when he introduced plaintiff to Ethridge, immediately prior to the consummation of the sale, he did not inform Ethridge of the character or details of their prior negotiations. He simply stated to Ethridge that he was not able to reach an agreement for the purchase of a car with plaintiff, and suggested that he endeavor to do so.

■ Plaintiff should have been impressed with Breard's lack of plenary authority to close sales from the fact that he was finally committed to Ethridge for that purpose and a sale consummated on terms entirely different to those Breard was able to offer, and entirely out of his presence. The situation had assumed such aspects that plaintiff, in the exercise of. ordinary precaution, should have concluded that he was dealing de novo with the president of defendant company who, after all, acts merely in the capacity of agent. Credit Alliance Corporation v. Centenary College, 17 La.App. 368, 136 So. 130. He should have brought to the attention of such president his desire to procure collision insurance, and not have left the question open for misunderstanding.

It appears that the fire and theft insurance, in a case of this character, is effected by the company purchasing the mortgage note. The premium is paid to the selling company by the purchaser. Plaintiff admits that the finance company which acquired the note he gave defendant, as was its custom and rule, mailed to him a copy of the certificate of insurance carried by it on his car. This certificate clearly disclosed that only fire and theft insurance was effected. It was received before the first installment of the note fell due. He admits he did not read it, but deposited it for safe-keeping in a trunk, among other papers of value to him. Had he read it carefully, as was his duty, he would then have learned that he was without the protection he thought he had. The ultimate result of his lack of care and prudence in the respect mentioned is the loss he has sustained from the damage to the car. He did not pay for the insurance which would have indemnified him against this loss, and did not protest or complain of the lack of such protection when provided with the intelligence that he had no such protection. Had he prudently acted, the error could have been timely corrected and his present loss averted.

■ We think a correct decision of the issue tendered by the pleadings and evidence simply turns upon an application of fundamental legal principles. An agent's authority to bind his principal is limited to the powers expressly delegated to him, and to those necessarily implied from such delegation as a means to the exercise of such powers. One dealing with an agent is required, for his own safety and protection, to look to the powers of the agent.

■ In the present case, Breard had authority from defendant to negotiate sales. Of course, if he made a cash sale, the terms did not need the approval of his superiors. It was different as to credit sales, as is clearly reflected from the record before us. Certainly he had no authority to bind his principal to the effecting of insurance not required by the company handling its paper. Therefore, it appears clear that all of Breard's propositions and suggestions were of a tentative or conditional character, and, when he was

removed from the field of negotiations, definitely came to an end. And, when plaintiff entered into negotiations with defendant's president, also its agent, the matter was approached entirely anew. He was not warranted in assuming that anything Breard had said and done would necessarily enter into the trade as was then and there negotiated and closed between him and Ethridge.

The judgment is affirmed.